**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
UNITED STATES OF AMERICA     )
                               )
         v.                 )     No. 18-CR-10249-WGY
                               )
MARK MOFFETT,             )
                               )
         Defendant.      )
_____

## GOVERNMENT'S SENTENCING MEMORANDUM

For the reasons set forth below, and as outlined in the Presentence Investigation Report, the United States respectfully recommends that the Court sentence Defendant Mark Moffett to a sentence of 74 months of incarceration, to be followed by three years of supervised release.  This recommendation includes 50 months of incarceration for the wire fraud plus a mandatory 24 months of incarceration for each count of aggravated identity theft, running concurrently.

This sentence appropriately accounts for the nature and circumstances of this offense, which was a sophisticated fraud scheme in which Moffett used personal relationships with medical staff to get access to patients, created false patient records, used physicians' identities to deceive health insurance plans into covering an expensive and dangerous drug, and in so doing, subverted safety protocols required by the Food and Drug Administration ("FDA") to protect patients.

Mark Moffett told doctors that they should prescribe Juxtapid for patients with high cholesterol who were intolerant to statins.  However, Juxtapid was only authorized for patients with a very specific genetic disease:  homozygous familial hypercholesterolemia ("HoFH").  Moffett completed prior-authorization forms and letters to the insurance companies stating that the patients had HoFH.  He forged doctors' signatures and used their personal identification information without their authorization.  He had medical staff call the insurance companies and state that the patients had HoFH.  He manipulated everyone and called himself the "puppet master" in a text message to his supervisor.  He did all this because Juxtapid cost roughly $25,000 per month and Moffett

received tens of thousands of dollars in bonuses for making purported sales of the drugs while engaging in this fraud.

For this, the defendant stands convicted of wire fraud and aggravated identity theft. He deceived his friends, as well as insurance companies to perpetuate a fraud that placed people at risk. He deserves a substantial sentence.

And to this day he has shown no remorse for his conduct.

## LEGAL STANDARD

In imposing a sentence under 18 U.S.C. § 3553, a court must focus on the specific defendant and case before it. *See Gall v. United States*, 552 U.S. 38, 52 (2007). As an initial step, a sentencing court must properly calculate a guidelines sentencing range, but it must then consider each of the factors in 18 U.S.C. § 3553(a) to ensure "an individualized assessment based on the facts presented." *Id*. at 49-50. A sentencing court need not explain its consideration of each factor and may assign different weights to the factors given the circumstances of a specific case. *United States v. Vázquez-Vázquez*, 852 F.3d 62, 66 (1st Cir. 2017). The First Circuit considers the "linchpin of a reasonable sentence" to be "a plausible sentencing rationale and a defensible result" that is "grounded on a sensible (though not obligatory) view of the circumstances." *United States v. Martin*, 520 F.3d 87, 96 (1st Cir. 2008).

## DISCUSSION

## I.      Sentencing Guideline Calculations

The government agrees with Probation's calculation of the defendant's Total Adjusted Offense Level as 23 (PSR ¶ 50). The United States and the defendant, through counsel, have agreed that, for the purposes of sentencing, the loss value under U.S.S.G. § 2B1.1 is between $1,500,000 and $3,500,000. Evidence at trial showed that the loss amount was at least $1.9 million dollars

without the additional relevant conduct laid out in the PSR. (PSR ¶ 34). The defendant did not object to Probation's guideline calculation.

## II.    Sentencing Factors Under 18 U.S.C. § 3553(a)

After considering the sentencing factors in 18 U.S.C. § 3553(a), the Court should impose a substantial prison sentence for Moffett.

First, as to the nature and circumstances of the offense, Moffett's offenses occurred in the context of a criminal corporate scheme at Aegerion Pharmaceuticals, Inc. to misbrand the drug Juxtapid by marketing it for the unapproved use of lowering cholesterol in patients who had not been diagnosed with HoFH, the only patient population for whom the FDA approved use of the drug. The evidence at trial showed that Moffett marketed the drug off-label, consistent with his employer's criminal scheme and that the victim doctors decided to use Juxtapid off-label with their high cholesterol patients.

The evidence at trial showed, however, that off-label marketing did not cause health insurance plans to cover the drug because, first, by law, Medicare Part D plans can only cover FDA-approved indications; second, private health care plans adopted comparable limitations on coverage; and third, a prescription for Juxtapid could only be valid if a prescribing physician enrolled in the FDA-mandated safety protocol (the "REMS") *and* certified that the patient had a diagnosis consistent with HoFH. The doctors in this case did not knowingly enroll in the REMS, did not knowingly certify patient diagnoses, and thus did not issue valid prescriptions for Juxtapid. The patients in this case did not have diagnoses of HoFH. Had Moffett merely marketed Juxtapid off-label, he could not have accomplished the fraud of which he stand convicted.

Moffett went further. He either forged or obtained physician signatures on forms. He created fraudulent insurance appeals letters. He made up patient test results, drug histories, and

diagnoses.  He carried out this fraud with skill and guile, using access to offices and staff of physicians whom he charmed.  His motive was greed.

Second, Moffett's history and characteristics do not mitigate his conduct.  He committed his crimes without being under any kind of extreme pressure or extenuating circumstance.  By all accounts, Moffett is a smart, genial, and capable professional who gets along with doctors, nurses, and patients.  He is well-educated and hard-working.  Simply put, Moffett is the kind of person who can get ahead and flourish when playing by the rules, but he chose to cheat.

Third, the sentence the Court imposes must reflect the seriousness of the offense, promote respect for the law, and provide sufficient general deterrence.  In this case, Moffett's crimes caused significant financial harm to health insurance plans.  Moreover, Moffett's crimes traded on the trust of physicians, medical staff, and patients, and Moffett treated patient records and physician letters as works of fiction to be manipulated and adapted as needed to get his bonuses, which were substantial.

The United States submits that the Court should use its discretion to impose concurrent sentences for the multiple counts of aggravated identity theft, in consideration of the substantial punishment and deterrence provided by the government's recommended sentence for the underlying wire fraud.  The United States submits that its sentence recommendation is sufficient, but not more than necessary to achieve the necessary deterrence.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court sentence

Defendant Mark Moffett consistent with the government's recommendation.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:     /s/ *Rachel Y. Hemani*
Kriss Basil
Rachel Y. Hemani
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

By:     /s/DRAFT
Kriss Basil
Assistant United States Attorney